UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

SHANDA E. TRIGG,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of the
Social Security Administration,

    Defendant.

CAUSE NO.: 2:19-CV-214-TLS

## OPINION AND ORDER

Plaintiff Shanda Trigg seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income. For the reasons set forth below, the Court remands for further administrative proceedings.

## PROCEDURAL BACKGROUND

On June 21, 2016, Plaintiff filed an application for supplemental security income, alleging a disability onset date of September 24, 2014. AR 180, ECF No. 11. The claims were denied initially and on reconsideration. *Id*. at 101, 110. Plaintiff requested a hearing, which was held before the Administrative Law Judge (ALJ) on March 19, 2018. *Id*. at 15, 29, 117, 135. On June 26, 2018, the ALJ issued a written decision and found Plaintiff not disabled. *Id.* at 15–24. On June 7, 2019, Plaintiff filed her Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision and remand for further proceedings. Plaintiff filed an opening brief [ECF No. 17], the Commissioner filed a response brief [ECF No. 18], and Plaintiff filed a reply brief [ECF No. 19].

**THE ALJ'S DECISION**

For purposes of supplemental security income, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 416.920(a)(4)(i), (b). In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 23, 2016, the application date. AR 17.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ determined that Plaintiff has the severe impairments of panic disorder, bipolar disorder, unspecified personality disorder, and borderline intellectual functioning. AR 17.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 416.920(a)(4)(iii), (d). Here, the

ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that he considered Listings 12.04, 12.06, 12.08, and 12.11. AR 18.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can understand, remember, and carryout instructions and exercise judgment to perform simple tasks. The claimant is limited to routine and repetitive work, which involves performing essentially the same tasks in the same place every day. The claimant requires no fast-paced or piece-rate work but end of day goals only. The claimant can have no interaction with the public; and no more than occasional, superficial interaction with supervisors and coworkers. The instructions should be delivered by demonstration or orally rather than in writing; and the work should require mathematics ability no higher than the sixth grade level.

AR 19.

After assessing the RFC, the ALJ moves to step four and determines whether the claimant can do her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv), (f). In this case, the ALJ found that Plaintiff has no past relevant work under 20 C.F.R. § 416.965. AR 23.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy given the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), (g). Here, the ALJ found that Plaintiff is not disabled because Plaintiff can perform

3

significant jobs in the national economy of car detailer, cleaner, and order picker. AR 24. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 416.912.

Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, Plaintiff presents three arguments in support of remand—the ALJ erred in weighing the opinion evidence of treating psychiatrist Dr. Ramirez; the ALJ failed to formulate an RFC that accounts for Plaintiff's moderate limitations in concentration, persistence, and pace; and the ALJ did not properly weigh Plaintiff's subjective complaints. The Court finds that remand is required for the ALJ to properly weigh Dr. Ramirez's opinion and to account for Plaintiff's moderate limitations in concentration, persistence, and pace.

5

**A.     Opinion Evidence**

Plaintiff argues that the ALJ erred by not giving controlling weight to the opinion of treating psychiatrist Dr. Ramirez. The treating physician rule, applicable in this case,[1] provides that the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (explaining that, under the "treating physician rule," the opinion of a treating physician "that is consistent with the record is generally entitled to 'controlling weight'" (citations omitted)). If an ALJ does not give the treating physician's opinion controlling weight, the ALJ must apply the factors set forth in the regulations to determine what other weight to give the opinion. 20 C.F.R. § 416.927(c)(2); *see also Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (requiring an explicit discussion of certain § 404.1527(c)(2) factors on remand).

The factors are whether there is an examining relationship; whether there is a treatment relationship, and if so, the length of the relationship, the frequency of examination, and the nature and extent of the relationship; whether the opinion is supported by relevant evidence and by explanations from the source; the consistency of the opinion with the record as a whole; whether the opinion was offered by a specialist about a medical issue related to the area of specialty; and any other factors that tend to support or contradict the opinion. 20 C.F.R.

---

[1] On January 18, 2017, the Commissioner published new regulations, "Revisions to Rules Regarding the Evaluation of Medical Evidence," which addressed 20 C.F.R. §§ 404.1527 and 416.927. However, the new regulations only apply to claims filed on or after March 27, 2017, and the claim in this case was filed in 2016.

§ 416.927(c)(2)–(6). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore*, 743 F.3d at 1127).

In this case, Dr. Ramirez, Plaintiff's treating psychiatrist, completed a Mental Medical Source Statement (MSS) on February 27, 2018. AR 532–37. Therein, Dr. Ramirez gave diagnoses of bipolar disorder and personality disorder and a current GAF score of 40. *Id*. at 532. In the lines following the topic "Treatment and response," Dr. Ramirez wrote that Plaintiff is on medication and is more stable with medication. *Id.* When asked to describe clinical findings demonstrating the severity of Plaintiff's mental impairment and symptoms, he listed "unstable mood & depression at times. Worry and anxiety are chronic, avoids crowds, anxious in cars." *Id.* Dr. Ramirez checked the boxes for the following signs and symptoms: appetite disturbance with weight change; decreased energy; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; persistent disturbances of mood or affect; apprehensive expectation; bipolar syndrome with a history of episodic periods manifested by full symptomatic picture of both manic and depressive syndromes; motor tension; emotional lability; vigilance and scanning; easy distractibility; and involvement in activities that have a high probability of painful consequences which are not recognized. *Id*. at 533.

Dr. Ramirez then opined that Plaintiff is "unable to meet competitive standards" for more than half of the "mental abilities and aptitudes needed to do unskilled work," specifically the following: remember work-like procedures; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision;

7

work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and deal with normal work stress. *Id.* at 534. Dr. Ramirez also opined that Plaintiff is "seriously limited, but not precluded" in the following categories: understand and remember very short and simple instructions; carry out very short and simple instructions; make simple work-related decisions; and accept instructions and respond appropriately to criticism from supervisors. *Id.* Finally, he opined that Plaintiff has "no useful ability to function" in the category of "maintain attention for two hour segment." *Id.* All of these are abilities to do work-related activities on a day-to-day basis in a regular work setting. *Id.*

As for the "mental abilities and aptitude needed to do particular types of jobs," Dr. Ramirez checked "unable to meet competitive standards" for "adhere to basic standards of neatness and cleanliness" and "travel in unfamiliar place." *Id.* at 535. He checked "seriously limited but not precluded" for "maintain socially appropriate behavior." *Id.* When asked to explain these limitations and provide medical/clinical findings in support, Dr. Ramirez listed chronic mood problems, avoids crowds, poor social skills. *Id.* at 535.

In another section of the MSS, Dr. Ramirez indicated that Plaintiff would find the following stressful: speed, precision, complexity, deadlines, working within a schedule, making decisions, exercising independent judgment, completing tasks, working with other people, dealing with the public (strangers), dealing with supervisors, being criticized by supervisors,

8

simply knowing that work is supervised, getting to work regularly, remaining at work for a full day, and fear of failure at work. *Id.* at 536. When asked how often on average Plaintiff would be absent from work, Dr. Ramirez checked the box for "more than four days per month." *Id.*

In weighing Dr. Ramirez's opinion, the ALJ noted only that Dr. Ramirez indicated that Plaintiff had no useful ability to maintain attention for two-hour segments; that she could not meet competitive standards for remembering work-like procedures, working in coordination with others, getting along with others, or dealing with normal work stress; and that she would miss more than four days a month. AR 22–23 (citing AR 532–37). The ALJ then gave "little weight" to the opinion on the basis that it is inconsistent with the record, giving three explanations. *Id.* at 23. First, the ALJ discounted the concentration limitations because Dr. Ramirez had found Plaintiff's concentration to be only "a bit poor" and because, prior to that, Dr. Dobransky indicated that Plaintiff had adequate concentration. *Id.* (citing AR 516, 518, 520, 522, 524, 526, 528). The ALJ then found that Plaintiff required no further social limitations and that she would not miss work because Plaintiff "admitted improvement in her mood and denied any panic with medication." *Id.* (citing AR 377–78, 515–16, 521–22, 548–50). Finally, the ALJ reasoned that Plaintiff stated "that she had worked on managing her stress with therapy." *Id.* (citing AR 357).

Plaintiff raises several arguments to show that the ALJ's reasoning is not supported by substantial evidence. In response, the Commissioner simply restates the ALJ's decision and offers no defense to Plaintiff's specific arguments. First, Plaintiff argues that that the ALJ failed to explain how Dr. Ramirez's examination finding that Plaintiff's concentration was "a bit poor" and Dr. Dobransky's examination findings of adequate concentration were inconsistent with Dr. Ramirez's opinion that Plaintiff could not meet competitive standards in areas such as

9

performing in a work environment at a consistent pace without an unreasonable number and length of rest periods. As reasoned by Plaintiff, the ALJ does not explain why someone with some concentration difficulties during a brief mental status exam with the psychiatrist might not also have difficulties sustaining work over an eight-hour workday in light of other diagnosed mental difficulties such as anxiety and stress.

Although the ALJ correctly noted that Dr. Dobransky's past treatment notes reflect "adequate concentration," Plaintiff's treating therapist Amy Bowman observed on multiple occasions during the same time period that Plaintiff was "fidgety" or "moves in seat", AR 352 (4/18/2016), 354 (5/2/2016), 357 (6/30/2016), 439 (7/25/2016), 455 (9/23/2016), 487 (8/17/2016), 497 (2/14/2017), 502 (6/26/2017), 508 (9/25/2017), 512 (12/7/2017), 543 (1/4/2018), 545 (1/25/2018), rocked herself, AR 439 (7/25/2016), was distracted AR 456 (9/23/2016), and exhibited pressured or rapid speech, AR 455 (9/23/2016), 462 (12/7/2017). Plaintiff also reported difficulties with concentration on several occasions. AR 268 (4/18/2016), 309 (4/18/2016), 316 (2/4/2015), 465 (9/23/2016), 472 (12/7/2017), 508 (9/25/2017). These longitudinal treatment records support Dr. Ramirez's opinion regarding concentration, and the ALJ did not discuss the consistency of Ms. Bowman's treatment notes in weighing Dr. Ramirez's opinion. *See Kaminski v. Berryhill*, 894 F.3d 870, 874–75 (7th Cir. 2018) (finding that the ALJ impermissibly cherry-picked evidence by overlooking the consulting psychologist's report on diminished cognitive abilities in favor of non-examining doctors who opined that the claimant could work with some restrictions); *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) ("An ALJ cannot recite only the evidence that supports his conclusions while ignoring contrary evidence."). The consistency between Dr. Ramirez's opinion and Ms. Bowman's

10

treatment notes tend to support giving Dr. Ramirez's opinion greater weight if not controlling weight. *See* 20 C.F.R. § 416.927(c)(3), (4) (indicating that supportability and consistency favor more weight to an opinion).

    Second, as for Dr. Ramirez's opinions on social functioning, the ALJ did not identify any specific social functioning limitation that he disagreed with. AR 23. Moreover, the ALJ discounted Dr. Ramirez's opinion on social functioning by reasoning that Plaintiff's mood had improved and that she denied any panic with medication. However, Plaintiff's social functioning difficulties also stem from her anxiety, with the record reflecting consistent complaints of difficulties leaving her home, shopping in stores, and interacting with others. For example, on August 17, 2016, Plaintiff told Ms. Bowman that she feared going to stores and being out in public as she felt she would be trampled and that she was unlikely to leave the house due to fear of asteroids and the end of the earth. AR 487. On December 14, 2016, and January 11, 2017, Plaintiff reported difficulty being in public, as leaving the house was anxiety-producing. AR 493, 494. On June 26, 2017, Plaintiff expressed that she felt "small and meek," which inhibited her from going out in public and meant she mostly isolated herself in her room. AR 502. In January 2018, Plaintiff relayed that she could not go out in public to shop and had tried to go places with her mother but only stayed in stores for a few minutes. AR 543. At the hearing, she testified that after ten to fifteen minutes in a grocery store, she felt that she would be trampled; her anxiety was very severe in crowds; and she felt like a little person and others were "giants." AR 43–44. Thus, even if Plaintiff experienced periodic improvements in mood, her anxiety disorder prevented her from being in public, which is consistent with Dr. Ramirez's opinions that she

could not meet competitive standards in responding appropriately to changes in a routine work setting, dealing with normal work stress, and getting along with co-workers or peers. AR 534.

Also, "improvement" and "stability" in and of themselves do not offer insight into an ability to work nor do they constitute an evaluation of work-related functions. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) (reasoning that characterizations that the claimant is medically improving and "neurologically stable" "do not given us an accurate description of [the claimant's] true neurological state"); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008); *Anglemyer v. Saul*, No. 3:18-CV-652, 2019 WL 5853837, at *5 (N.D. Ind. Nov. 8, 2019). To say that someone has improved indicates only that the person is doing better than before and offers no insight into the prior or current condition. And to say that someone is stable indicates only that the person's condition is not changing without qualification of that condition. The meaningful inquiry is the actual condition of Plaintiff's impairments and the resulting limitations, and the ALJ offers no analysis of the evidence in this context. *Murphy*, 759 F.3d at 819. ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled."). Plaintiff earlier informed Dr. Dobransky that she had "ups and downs" with her mood, AR 523, and this is consistent with a January 10, 2017 visit in which she reported ongoing depression, nightmares, low energy, anxiety, shakes, agoraphobia, and getting upset with people, *id.* at 519–20. In his opinion, Dr. Ramirez's provided reasoning for his opinion that Plaintiff has "chronic mood problems, avoids crowds, poor social skills." *Id.* at 535. Thus, even though she may have had improvements in her mood, the problems persisted.

12

Third, as to Dr. Ramirez's opinion that Plaintiff would miss more than four days of work per month, the ALJ did not explain how an improvement in mood and a denial of panic attacks with medication indicated an ability to maintain adequate work attendance. Plaintiff repeatedly reported difficulties leaving her house and being in public. AR 313, 487, 493–94, 502, 506, 512, 543. She left stores after a few minutes due to anxiety. *Id.* at 43. While working at Subway for her father in 2009 (a job from which she was fired by her father for poor performance), she became overwhelmed with crowds and stormed out of the restaurant, breathing into a bag. *Id.* at 48–49. This evidence supports Dr. Ramirez's opinions about Plaintiff's ability to remain in a workplace a full day or a full work week. The ALJ did not discuss any of this evidence that supports Dr. Ramirez's opinion. *See Gerstner v. Berryhill*, 879 F.3d 257, 261–62 (7th Cir. 2018) (reversing where the ALJ "fixated on select portions" of the treating psychiatrist's notes and "inadequately analyzed his opinions").

Finally, the ALJ did not address the stress-related limitations contained in Dr. Ramirez's opinion, which the Court listed above. AR 536. Nor did the ALJ address Dr. Ramirez's opinion that Plaintiff would be unable to meet competitive standards in dealing with normal work stress and responding to changes in a routine work setting. AR 534. An individual who cannot withstand ordinary work stress cannot sustain unskilled work:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day . . . . Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.

SSR 85-15, 1985 WL 56857, *6 (Jan. 1, 1985).

An ALJ may not selectively consider certain aspects of a medical opinion but must consider whether the opinion is supported by objective evidence and is consistent with other substantial evidence in the record. *Roddy v Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The ALJ's decision not to give Dr. Ramirez's opinion controlling weight is not supported by substantial evidence and remand is required for the ALJ to provide a sufficient explanation based on substantial evidence of record.

**B.     Residual Functional Capacity**

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if

14

available. *Id*. at *5.

Here, the ALJ determined, in relevant part, that Plaintiff has the RFC "to understand, remember, and carryout instructions and exercise judgment to perform simple tasks." AR 19. The ALJ further limited Plaintiff "to routine and repetitive work, which involves performing essentially the same tasks in the same place every day." *Id.* The ALJ explained that he limited Plaintiff to simple, routine tasks "because of difficulty concentrating due to her racing thoughts from bipolar disorder as well as anxiety." *Id.* at 22. And, the ALJ found that Plaintiff "requires no fast-paced or piece-rate work but end of day goals only." *Id.* at 19. The ALJ reasoned that Plaintiff "requires no fast-paced work because of increased anxiety in stressful situations." *Id.* at 22.

The Seventh Circuit has made it clear that a limitation in a hypothetical to "simple, routine, repetitive tasks" does not account for limitations in concentration, persistence, and pace. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019)); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt*, 758 F.3d at 858–59; *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619–20 (7th Cir. 2010). This is because a limitation to "simple, routine, repetitive tasks," which is a reference to "unskilled work," does not necessarily exclude from the vocational expert's consideration jobs that present significant problems of concentration, persistence, and pace. *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017) (citing 20 C.F.R. §§ 404.1568, 404.1520). Unskilled work is defined as simple work that can be learned by demonstration in less than 30 days. 20 C.F.R. § 416.968(a). However, whether work can be learned over a certain period of time "is unrelated to the question of whether an individual with mental impairments—e.g., with difficulties maintaining

15

concentration, persistence, or pace—can perform such work." *Varga*, 794 F.3d at 814; *see also Lanigan*, 865 F.3d at 565–66; *Yurt*, 758 F.3d at 858–59.

Plaintiff first argues that the ALJ has not explained how simpler work would make it easier, or possible, for Plaintiff to concentrate, persist, and maintain pace in light of her racing thoughts, bipolar disorder, and anxiety. Plaintiff lists the treatment notes from Regional Mental Health Center that reflect complaints of racing thoughts along with easy distractibility and argues that the ALJ substituted his lay opinion for that of medical professionals. Pl.'s Br. 14, ECF No. 17 (citing AR 268, 309–10, 465, 472). The Commissioner is correct that the ALJ discussed the record evidence on pages 20-22 of the decision, tracing Plaintiff's treatment history from April 2016 to February 2018. However, none of that history was discussed by the ALJ in the context of assigning the mental RFC, and the ALJ did not explain how these records show that simple work accommodates Plaintiff's distractibility.

The Commissioner also notes that the ALJ relied on the opinion of the state agency reviewing psychiatrists, Dr. Gange and Dr. Neville, on July 14, 2016, and August 16, 2016, respectively, both of whom found that Plaintiff could perform simple, repetitive tasks. AR 22, 64–67, 75–77. Indeed, the ALJ gave some weight to their opinions and adopted their finding of simple, repetitive tasks, but then added more restrictions regarding oral instructions, social limitations, and no fast-paced work. *Id.* at 22. Again, however, the ALJ did not explain how decreasing the complexity of the task would allow Plaintiff to perform the task and did not create a logical bridge between the evidence of record and this limitation. And, as set forth in the section above, the ALJ did not properly weigh the opinion of Plaintiff's treating physician's February 27, 2018 opinion, which was based on eighteen additional months of treatment records.

16

*See id.* at 532–37. The Commissioner points to the ALJ's notation that Plaintiff had no issues concentrating when visiting the field office. *See id.* at 18–19, 201. However, the ALJ did not explain how such a visit relates to Plaintiff's ability to sustain concentration through a workday and workweek.

Second, Plaintiff argues that the limitation to no "fast-paced work" is not supported by substantial evidence. The ALJ acknowledged that Plaintiff experienced "increased anxiety in stressful situations" and limited her to no "fast-paced work." However, he did not define the term "fast-paced" nor did he explain how Plaintiff's specific stress-related issues would allow her to perform average or slow-paced work. *See Varga*, 794 F.3d at 815 (remanding, in part, because the ALJ failed to define the term "fast paced production" and holding that without such a definition, a vocational expert could not assess whether an individual with the claimant's limitations could maintain the pace proposed). There is a similar lack of definition as to the limitation of "end of day goals." The ALJ offered no explanation for how this limitation accommodates Plaintiff's specific impairments, and there is nothing in the record to suggest that Plaintiff would either be able to plan ahead and get all her work done at the beginning of the day or catch up at some other time of the day. As noted by Plaintiff, the court in *Novak v. Berryhill* considered a limitation to "simple, routine and repetitive tasks with no fast-pace or strict production quotas, but he can meet end of day requirements" and found that the limitation

> is vague and unsupported by any medical opinion. It is vague because the ALJ did not explain the underlying logic. Presumably, although the Court is not entirely sure, the ALJ is envisioning a tortoise-and-the-hare scenario in which plaintiff would be unable to keep pace consistently throughout the day but could somehow catch up later in the day. If so, there is nothing in the record to suggest that plaintiff, despite his slow processing speed, had unusual bursts of productive energy . . . .

17

No. 15 CV 50236, 2017 WL 1163733, at *7 (N.D. Ill. Mar. 29, 2017).

Again, Plaintiff's stressors include speed, precision, working within a schedule, being criticized by supervisors, knowing that work is supervised, getting to work regularly, remaining at work for a full day, and fear of failure at work. AR 536. Because the ALJ did not discuss the stress-related limitations contained in Dr. Ramirez's opinion, it is unclear whether the ALJ considered them and how they are accommodated by the RFC. It is also unclear how someone who requires special supervision to sustain an ordinary routine could function with "no more than occasional, superficial interaction with supervisors" as provided in the RFC. *See id.* at 19.

Although the RFC is an administrative determination, it must nevertheless be based on the evidence of record, and the ALJ must explain his reasoning. *See* 20 C.F.R. § 416.946(c); *see also Crump*, 932 F.3d at 570 (discussing Seventh Circuit law on incorporating moderate limitations in concentration, persistence, and pace in the RFC); *Lanigan*, 865 F.3d at 563 (finding the ALJ made no effort to build an accurate and logical bridge between plaintiff's moderate limitations in concentration, persistence, and pace and the RFC). Remand is required for full consideration of Plaintiff's residual functional capacity in light of her moderate limitations in concentration, persistence, and pace and the evidence of her racing thoughts, anxiety, and stress-related limitations.

Finally, Plaintiff also seeks remand in relation to the ALJ's consideration of her subjective complaints. On remand, the ALJ will have an opportunity to discuss (1) all of the reasons Plaintiff has difficulty leaving her room related to her anxiety, (2) Plaintiff's motivation for using public transportation to donate plasma in order to earn money to feed her dog, and (3)

18

not only the evidence of improvement but also the evidence of panic attacks in the work setting, poor sleep, and concern about not living independently due to anxiety.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in Plaintiff's brief [ECF No. 17], REVERSES the decision of the Commissioner of the Social Security Administration, and REMANDS for further proceedings consistent with this Opinion.

SO ORDERED on August 5, 2020.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT